UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION NO. 18-00300-01 [CIVIL ACTION NO. 19-1300] |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| DEUNDRE FLEEKS | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is a Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C § 2255 filed by Petitioner Deundre Fleeks ("Fleeks" or "Petitioner"). See Record Document 26. The United States of America ("the Government") opposed the motion (Record Document 33) and Fleeks replied (Record Document 34). For the reasons set forth below, Fleeks's motion is **DENIED**.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

In a Bill of Information filed on November 8, 2018, Fleeks was charged with one count of Financial Aid Fraud. See Record Document 17 at ¶ 1. Beginning in 2014, Fleeks completed a Free Application for Federal Student Aid ("FAFSA") in the name of J.M. See id. at ¶ 9. In that application, Fleeks represented that J.M. would be attending Bossier Parish Community College ("BPCC") in Bossier City, Louisiana. See id. Fleeks then executed a Master promissory Note in J.M.'s name with the William D. Ford Federal Direct Loan Program, stating that J.M. was attending BPCC and the funds would be used for authorized educational expenses. See id. Based on these representations, the Department of Education approved the funding and disbursed $23,994 in Federal Direct Stafford Loans and $12,964 in Federal Pell Grants. See id.  BPCC applied the funds,

upon receipt, to the cost of the classes in which J.M. was enrolled and issued refunds to J.M. for the remaining balance. See id.

However, J.M. did not attend BPCC, fill out the FAFSA, or fill out the Master Promissory Note. See id. at ¶ 10. J.M. did not perform any coursework at BPCC. See id. In reality, Fleeks would do the coursework himself in order to keep J.M.'s account in good standing. See id. Fleeks enrolled J.M. in courses at BPCC for five consecutive semesters. See id. Per an agreement between J.M. and Fleeks, J.M. paid Fleeks $1,000 for each semester that he enrolled her at BPCC and completed her coursework. See id.

In addition to J.M., Fleeks enrolled nineteen other individuals in BPCC and completed FAFSAs and Master Promissory Notes in their names. See id. at ¶ 11. Based on the misrepresentations in the documents, the Department of Education disbursed loan proceeds to BPCC, which in turn refunded a portion to the individuals. See id. Similar to the agreement he had with J.M., Fleeks would complete the coursework and the individuals would pay him $1,000 per semester for obtaining the funds. See id. In total, the Department of Education disbursed $404,961 to Fleeks through these individuals. See id. at ¶ 15.

Fleeks waived grand jury indictment and pleaded guilty to the sole count of the Bill of Information in December 2018. See Record Document 33 at 3. Fleeks was represented by retained counsel for both his guilty plea and sentencing. See id. at 3-4. Prior to sentencing, a Presentencing Report ("PSR") was issued. See Record Document 17. The PSR recommended a base offense level of 6, pursuant to U.S.S.G. § 2B1.1(a)(2). See id. at ¶ 21. The base offense level was increased by 12 levels pursuant to U.S.S.G. § 2B1.1(b)(1)(G) because the loss was more than $250,000 but less than $550,000. See

id. at ¶ 22. The offense level was then reduced by three levels for Fleeks's timely acceptance of responsibility for a total offense level of 15. See id. at ¶ 28-30. Given his total offense level of 15 and his Criminal History Category I, the guideline imprisonment range was 18-24 months. See id. at ¶ 63-64.

The Defendant raised three objections to the PSR prior to sentencing. See Record Document 17 at 20-21. At sentencing, the Court reviewed and clarified the objections to the PSR with counsel and heard evidence on the issues. See Record Document 19 at 3-6. Specifically, Special Agent Mark Bradley testified as to Fleeks's role in the criminal scheme. See Record Document 33 at 5. During the cross-examination, the Court expressed concern that defense counsel was attempting to repudiate aspects of the factual stipulation to which Petitioner had attested in connection with his guilty plea. See id. at 6. During the course of this conversation with the Court, defense counsel clarified that she was seeking to inform the Court of certain factors with the hope that the Court would "veer from the guidelines." Record Document 19 at 23-24.

Defense counsel ultimately informed the Court that the Defendant withdrew his objections to the PSR, but still wished to present letters attesting to his character. See id. at 29. The Court reviewed the letters and considered them as additional sentencing materials. See id. at 30-31. In addition, the Court considered Fleeks's personal allocution statement and defense counsel's arguments in favor of mitigating Fleeks's sentence. See id. at 31-32. The Court also considered argument from the Government, which urged the Court to sentence Fleeks within the guideline range because the criminal conduct involved the complicity of twenty individuals and over $400,000 in federal financial aid. See id. at 33.

After considering these arguments and the factors contained in 18 U.S.C. § 3553(a), the Court imposed a sentence of eighteen months of confinement and a one-year term of supervised release. See id. at 34. No direct appeal was taken. Petitioner then timely filed the instant motion under Section 2255.

## LAW AND ANALYSIS

Fleeks contends that he received constitutionally ineffective assistance of counsel in connection with his sentencing. See Record Document 26. His petition raises a sole claim that his attorney "did not understand the law, procedure or facts." See id. at 4. Specifically, Fleeks asserts that his attorney should have filed a Motion for Downward Departure or Variance from the Guidelines pursuant to 18 U.S.C. § 3553(e) (hereinafter referred to as "§ 3553(e) motion"). See id. In his supporting memorandum, Fleeks asserts that a reading of the sentencing transcript reveals he did not have effective assistance of counsel. See Record Document 26-1. The Government opposes this argument, noting that Fleeks's attorney was not required to file a written motion for a departure or variance. See Record Document 33 at 9. As discussed fully below, Fleeks's claim is without merit.

I. **Legal Standards**

   a. **Section 2255 Legal Standard**

After conviction and exhaustion of a defendant's right to appeal, the Court is "entitled to presume that the defendant stands fairly and finally convicted." U.S. v. Shaid, 937 F.2d 228, 231-32 (5th Cir. 1991) (citing U.S. v. Frady, 456 U.S. 152, 164, 102 S.Ct. 1584 (1982)). According to the Supreme Court, "[o]ur trial and appellate procedures are not so unreliable that we may not afford their completed operation any binding effect beyond the next in a series of endless postconviction collateral attacks. To the contrary,

a final judgment commands respect." Frady, 456 U.S. at 164-65. Consequently, issues that can be presented in a motion filed under 28 U.S.C. § 2255 are limited. A defendant can challenge a final conviction only on issues of constitutional or jurisdictional magnitude. See Shaid, 937 F.2d at 232. As the Fifth Circuit has stated:

> Relief under 28 U.S.C.A. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. Nonconstitutional claims that could have been raised on direct appeal, but were not, may not be asserted in a collateral proceeding.

U.S. v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992) (citations omitted).

Even if a defendant wishes to assert issues that are constitutional or jurisdictional in nature, he may be procedurally barred from raising them. In order to raise an issue for the first time on collateral review, a defendant must show both "cause" for his procedural default and "actual prejudice" resulting from the error. Frady, 456 U.S. at 168; Shaid, 937 F.2d at 232. To establish "cause," defendant must show that some external impediment prevented him from raising the claim on direct appeal. See U.S. v. Flores, 981 F.2d 231, 235 (5th Cir. 1993). In order to meet the "actual prejudice" test, he must demonstrate not just the possibility of prejudice, "but an actual and substantial disadvantage, infecting his entire trial with error of constitutional dimension." Shaid, 937 F.2d at 233.

### b. Ineffective Assistance of Counsel Legal Standard

The general rule prohibiting a defendant from raising claims on collateral review absent "cause" and "actual prejudice" does not apply to claims of ineffective assistance of counsel. Massaro v. U.S., 538 U.S. 500, 504, 123 S.Ct. 1690, 1693 (2003). This "procedural default rule is neither a statutory nor constitutional requirement, but it is a doctrine adhered to by the courts to conserve judicial resources and to respect the law's

important interest in the finality of judgments." Id. at 504. Requiring a criminal defendant to bring claims of ineffective assistance of counsel on a direct appeal does not promote these objectives. See id. A claim of ineffective assistance of counsel cannot be properly resolved on appeal because there has been no opportunity to develop the record on the merits of these allegations. See id. Thus, a criminal defendant is permitted to bring ineffective assistance of counsel claims in a collateral proceeding under § 2255, regardless of whether such claims could have been raised on direct appeal. See id.

To prevail on an ineffective assistance of counsel claim, a petitioner must show "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052 (1984). To prove deficient performance, the petitioner must show that counsel's actions "fell below an objective standard of reasonableness." Id. at 688. To prove prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "The likelihood of a different result must be substantial, not just conceivable." Harrington v. Richter, 562 U.S. 86, 112 (2011).  A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding. See Strickland 466 U.S. at 694.

With specific regard to sentencing, the defendant must demonstrate a reasonable probability that, but for counsel's errors with respect to sentencing matters, he would have received less time in prison. See U.S. v. Grammas, 376 F.3d 433, 438 (5th Cir. 2004). Failure to establish either deficient performance or prejudice defeats the claim. See Strickland 466 U.S. at 697.

## II. Analysis

As an initial matter, the Court notes that Petitioner's claim is vague and conclusory. It is not the task of the Court to develop arguments on behalf of a litigant. See United States v. Pineda, 988 F.2d 22, 23 (5th Cir. 1993) ("[M]ere conclusory allegations on critical issues are insufficient to raise a constitutional issue."); see also Lookingbill v. Cockrell, 293 F.3d 256, 263 (5th Cir. 2002) (nothing that where a habeas petitioner fails to brief an argument adequately, it is considered waived). Petitioner's memorandum in support of his motion is perfunctory. Notwithstanding this, the Court will still address his claim.

First, Fleeks's contention that his attorney should have filed a § 3553(e) motion fails, as it is not within the defense attorney's power to file a § 3553(e) motion. The plain language of the statute provides that relief may only be granted "upon motion of *the Government*." 18 U.S.C. § 3553(e) (emphasis added). Therefore, Fleeks's attorney cannot be said to have been ineffective for failing to file a motion she had no authority to file. See generally Smith v. Puckett, 907 F.2d 581, 585 n.6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim.") and U.S. v. Rademacher, 344 F. App'x 894, 895 (5th Cir. 2009) (holding that defense counsel's failure to secure an agreement in negotiations with the government to make a § 3553(e) motion did not amount to ineffective assistance of counsel). Therefore, it is clear that Fleeks has failed to prove that his attorney's actions regarding a possible § 3553(e) motion "fell below an objective standard of reasonableness." Strickland, 466 U.S. at 687.

Second, Fleeks's contention that the sentencing transcript clearly shows ineffective assistance of counsel is likewise conclusory and meritless. Fleeks does not

provide the Court with any citations to any arguments in which the Court may find ineffective assistance, nor does he provide the Court with any legal basis to support his claim that his attorney was ineffective. "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." Blackledge v. Allison, 431 U.S. 63, 74 (1977). The Court finds that Fleeks's ineffective assistance of counsel claim is too brief and lacks the necessary facts for this Court to properly address them. "Judicial scrutiny of counsel's performance must be highly deferential" and "every effort [must] be made to eliminate the distorting effects of hindsight." Strickland, 466 U.S. at 689. Courts, therefore, must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. Petition has not provided any evidence to overcome this strong presumption. Moreover, this Court conducted a thorough review of the record and finds that the record does not support a finding that Fleeks received ineffective assistance of counsel at sentencing.

## CONCLUSION

For the reasons stated above, Fleeks's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (Record Document 26) is hereby **DENIED**.

Pursuant to Rule 11(a) of the Rules Governing 2255 Proceedings for the United States District Courts, this Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. "Before entering the final order, the court *may* direct the parties to submit arguments on whether a certificate should issue." Rule 11(a), Rules Governing Section 2255 Proceedings for the United States District Court (emphasis added). Unless a Circuit Judge or a District Judge issues a certificate of

appealability, an appeal may not be taken to the court of appeals. In this instance, a certificate of appealability is **DENIED** because the applicant has failed to demonstrate a substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2255(c)(2).

An order consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 8th day of March, 2023.

　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　S. MAURICE HICKS, JR., DISTRICT JUDGE
　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE